**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230072-U

Order filed October 10, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| JAMARIAN TRIPP, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-23-0072 |
| | ) | Circuit No. 20-L-1140 |
| BOARD OF EDUCATION OF | ) | |
| HINSDALE TOWNSHIP HIGH | ) | |
| SCHOOL DISTRICT 86, | ) | The Honorable |
| | ) | Bryan S. Chapman and Neal W. Cerne, |
| Defendant-Appellee. | ) | Judges, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade concurred in the judgment.
Justice Albrecht concurred in part and dissented in part.

_____

**ORDER**

¶ 1     *Held*:    In an appeal in a civil lawsuit against a defendant school board for personal injuries that the plaintiff student suffered when he hit his head on an unpadded brick wall in his high school introductory tumbling class, the appellate court held that the trial court: (1) properly granted the defendant's motions to dismiss the plaintiff's claims against the defendant that alleged willful and wanton conduct because the plaintiff failed to plead sufficient facts to establish that the teacher involved or the defendant had engaged in such conduct; (2) properly granted the defendant's motion to dismiss the plaintiff's claim against the defendant that alleged ordinary negligence because the defendant was immune from liability for such a claim since the property involved was recreational property; and (3)

properly denied plaintiff's motions to strike all or a portion of certain documents, to conduct additional discovery, and for leave to file a fourth amended complaint, to the extent that it was necessary for the appellate court to review the trial court's rulings on those motions. The appellate court, therefore, affirmed the trial court's judgment granting the defendant's motions to dismiss all of the applicable counts of plaintiff's various amended complaints with prejudice.

¶ 2 Plaintiff, Jamarian Tripp, filed a civil lawsuit against defendant, the Board of Education of Hinsdale Township High School District 86, for personal injuries that plaintiff suffered when he hit his head on an unpadded brick wall in his high school introductory tumbling class. Defendant filed combined motions to dismiss the applicable counts of plaintiff's various amended complaints pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)) asserting that plaintiff had failed to plead sufficient facts to establish that the teacher involved or defendant had engaged in willful and wanton conduct and that defendant was immune from liability for the injuries based upon certain sections of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1-101 *et seq.* (West 2018)).[1] Following full briefing and hearings on the matter, the trial court granted defendant's motions and eventually dismissed all of the applicable counts of plaintiff's various amended complaints with prejudice. Plaintiff appeals. We affirm the trial court's judgment.

¶ 3 I. BACKGROUND

¶ 4 The facts as set forth in the applicable portions of plaintiff's amended complaints, the motions to dismiss and supporting documents (when those motions and documents can be

---

[1]Defendant also alleged that it was immune from liability under the School Code (105 ILCS 5/1-1 *et seq.* (West 2018)). However, since the trial court based its decision on the Tort Immunity Act, the parties have primarily focused their arguments on appeal on the application of the Tort Immunity Act. An analysis of the application of the School Code would not lead to a different result in this case. Thus, we will limit our discussion in this appeal to the application of the Tort Immunity Act to the issues presented.

considered), and the procedural record can be summarized as follows. In October 2019, plaintiff was a student at Hinsdale South High School in Darien, Du Page County, Illinois. The high school was owned, operated, maintained, and controlled by defendant. Plaintiff was enrolled for credit in an introductory tumbling class. The class was taught in a tumbling room (also known as the gymnastics balcony) that was located in the upper level of the high school's gymnasium. The tumbling room had a padded and spring-loaded floor that was designed for tumbling and gymnastics floor exercises. The room ended approximately six inches away from a brick wall, which contained the entrance to the tumbling room. The brick wall was not covered in padding.

¶ 5        The tumbling class was taught by Mia Tritch. Tritch was an employee of defendant and was acting within the scope of her employment when she was teaching the tumbling class. Tritch had been involved in gymnastics when she was growing up and had competed through USA Gymnastics for three years as a level 10 gymnast, the highest level of novice competition. In addition to teaching physical education (PE) classes at the high school, Tritch had also worked for several years as a gymnastics coach at the high school. USA Gymnastics was the national governing body for the sport of gymnastics in the United States and set the rules and policies for the sport. Based upon Tritch's background and experience, she had extensive knowledge of the USA Gymnastics tumbling safety rules and equipment specifications, which provided, among other things, that tumbling tracks should be placed well away from walls or other obstructions; that if a tumbling track ended near a wall, the wall had to be padded; that landing areas and landing zones had to be of certain specified dimensions; that landing zones had to be a contrasting color or marked with contrasting color lines; and that the area surrounding the tumbling floor should be covered by gymnastics mats to a distance of at least six feet from the edge of the tumbling surface. Both prior to and on the date of plaintiff's injury, Tritch had

3

inspected the tumbling room and had actual knowledge that the room did not comply with the listed USA Gymnastics safety rules. Tritch also had actual knowledge from her participation in and involvement with gymnastics over the years that gymnastics participants would "commonly" over-rotate or fall out of bounds while performing tumbling maneuvers.

¶ 6 Every tumbling class began with the students performing a basic tumbling warm-up routine that was directed by Tritch. During the warm-up routine, the students would typically line up on the side of the tumbling mat located across from the unpadded brick wall and perform various tumbling exercises toward the wall as they were instructed to do by Tritch.

¶ 7 On October 10, 2019, during the warm-up portion of the tumbling class, plaintiff performed a roundoff tumbling maneuver toward the brick wall. As plaintiff was performing the maneuver, he fell and struck the back of his head with great force against the brick wall, a sharp fire alarm box that was located on the wall in that area, or a combination of both, and suffered a severe permanent head or brain injury.

¶ 8 About a year later, in October 2020, plaintiff filed the instant civil lawsuit against defendant.[2] Plaintiff did not name Tritch as a codefendant in the lawsuit. Defendant filed a motion to dismiss the original complaint, which the parties resolved by agreement, and plaintiff was granted leave to file a first amended complaint. Plaintiff did so in January 2021.

¶ 9 The first amended complaint contained three counts. In count I, plaintiff alleged a direct liability claim against defendant for ordinary negligence, for failing to construct and maintain its property in a reasonably safe condition (referred to hereinafter at times as plaintiff's failure to

---

[2]The initial complaint was filed when plaintiff was a minor, and the caption indicated that the lawsuit had been brought by plaintiff's mother on plaintiff's behalf. Later amended versions of the complaint, however, were apparently filed after plaintiff had become an adult, and the language regarding plaintiff's mother bringing the lawsuit on plaintiff's behalf was no longer included in the caption.

4

maintain property claim). Plaintiff asserted in count I that defendant had acted negligently by, among other things, constructing and maintaining the tumbling room with the tumbling mat located a few inches away from an unpadded brick wall and without having a proper landing zone, allowing that unreasonably dangerous condition to exist on its property, and failing to provide the necessary safety equipment to prevent injuries in the form of padding for the brick wall. In count II, plaintiff again alleged his failure to maintain property claim against defendant but asserted that defendant's acts or omissions (including an additional allegation that defendant had consciously ignored a known risk) constituted willful and wanton conduct, rather than ordinary negligence. In count III of the first amended complaint, plaintiff alleged a vicarious liability claim against defendant for Tritch's willful and wanton failure to properly supervise the tumbling class (referred to hereinafter at times as plaintiff's improper supervision claim). Plaintiff asserted in count III that Tritch's acts or omissions (and those of defendant where applicable) constituted willful and wanton conduct because Tritch had actual knowledge of the risks involved (since Tritch had actual knowledge that the brick wall did not have padding on it, that the floor leading up to the wall was spring-loaded, that the brick wall was located within inches of the end of the tumbling mat, that students had come into contact with the unpadded brick wall on prior occasions, that the tumbling room was not in compliance with USA Gymnastics safety rules, that plaintiff had limited tumbling skill and coordination, and that gymnastics participants would commonly over-rotate or fall out of bounds while performing tumbling maneuvers) but consciously disregarded those known risks and instructed her students to tumble toward the unpadded brick wall during the warm-up routine, without having the students place padding on the wall prior to doing so and without having any spotters present to prevent the students from making contact with the wall.

5

¶ 10 Defendant filed a combined motion, which it subsequently amended, to dismiss the first amended complaint pursuant to section 2-619.1 of the Code. In the amended motion, defendant asserted that dismissal of counts I and II (plaintiff's failure to maintain property claims) was warranted under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)) because defendant was immune from liability under the Tort Immunity Act (and the School Code) for those claims. Defendant also asserted in the motion that dismissal of counts II and III (plaintiff's willful and wanton conduct claims) was warranted under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) because plaintiff failed to plead sufficient facts to establish willful and wanton conduct. Defendant attached to its amended motion various supporting documents, including the affidavit of Tritch.

¶ 11 Plaintiff filed a motion, which he later amended, seeking to conduct certain discovery prior to responding to defendant's motion to dismiss. Following the trial court's direction, the parties reached a partial agreement as to plaintiff's discovery motion. Pursuant to that agreement, defendant tendered to plaintiff answers and supporting documents to plaintiff's interrogatories regarding the recreational use of the tumbling room over the past several years and any prior injuries that had occurred in the tumbling room similar to plaintiff's injury. Defendant disclosed that no such prior injuries had occurred.

¶ 12 The trial court elected to proceed first on the section 2-615 portion of the amended motion to dismiss and had the parties brief the issues pertaining to that portion of the amended motion. After the briefing was completed, the trial court held a hearing on that portion of the amended motion in September 2021. Shortly after the hearing started, the trial court questioned the parties regarding some concerns that it had about the first amended complaint. The trial court indicated that it could not tell from the first amended complaint whether plaintiff was alleging

6

that the USA Gymnastics rules applied in the context of the present case (a high school PE tumbling class) or what significance plaintiff was claiming that the USA gymnastics rules had to the instant willful and wanton conduct analysis. The trial court granted the section 2-615 portion of defendant's amended motion to dismiss on that basis alone, dismissed counts II and III of the first amended complaint without prejudice, and granted plaintiff leave to file a second amended complaint so that plaintiff could clarify his allegations regarding the applicability and significance of the USA Gymnastics rules.

¶ 13        The following month, plaintiff filed a second amended complaint, which contained four counts. In count I of the second amended complaint, plaintiff repeated and realleged count I from the first amended complaint and noted that count I was still pending and had not been dismissed. In counts II and III of the second amended complaint, plaintiff repeated and realleged counts II and III from the first amended complaint, noted that the two counts had previously been dismissed, and indicated that he had merely set forth those counts again to preserve those counts for later possible appellate review. In count IV of the second amended complaint, plaintiff re-pled his improper supervision claim that alleged willful and wanton conduct (count III in the first amended complaint). Plaintiff added allegations to that claim, however, to try to establish that the safety rules of USA Gymnastics and the National Federation of State High School Associations applied in the context of the present case and that Tritch had violated those rules and had consciously disregarded a known risk by instructing plaintiff to tumble toward the unpadded brick wall.

¶ 14        Defendant filed a combined motion to dismiss the two active counts of the second amended complaint. Defendant asserted in the motion that dismissal of count I (the failure to maintain property claim that alleged ordinary negligence) was warranted under section 2-619 of

the Code because defendant was immune from liability for ordinary negligence under certain sections of the Tort Immunity Act (and the School Code). Defendant also asserted in the motion that dismissal of count IV (the improper supervision claim that alleged willful and wanton conduct) was warranted under section 2-615 of the Code because plaintiff failed to allege sufficient facts to establish his claim of willful and wanton conduct. Defendant attached to its motion various supporting documents, including the affidavit of Tritch and defendant's answers to plaintiff's interrogatories, along with certain attachments to those answers.

¶ 15      The trial court again elected to proceed first on the section 2-615 portion of defendant's motion to dismiss and had the parties brief the issues raised in that portion of the motion. In January 2022, the trial court held a hearing on that portion of the motion and the parties made oral arguments in support of their respective positions. The following month, the trial court announced its ruling. The trial court found that plaintiff had failed to plead sufficient facts to establish that Tritch's acts or omissions constituted willful and wanton conduct. The trial court granted the section 2-615 portion of defendant's motion on that basis and dismissed count IV of plaintiff's second amended complaint with prejudice. As to the sole remaining claim, count I of the second amended complaint, the trial court granted plaintiff leave to file a third amended complaint so that plaintiff could set forth count I fully instead of merely incorporating it into the active pleading by reference.

¶ 16      In March 2022, plaintiff filed his third amended complaint, which contained four counts. In count I of the third amended complaint, plaintiff set forth in full his prior failure to maintain property claim against defendant that alleged ordinary negligence. As for the remaining counts, plaintiff indicated in the third amended complaint that he was repeating and realleging counts II,

8

III, and IV from the prior amended complaints to preserve those counts for later possible appellate review.

¶ 17        Defendant filed a renewed motion to dismiss count I (and the third amended complaint) pursuant to section 2-619 of the Code, asserting that it was immune from liability for plaintiff's claim of ordinary negligence under certain sections of the Tort Immunity Act (and the School Code). Defendant attached to the motion various supporting documents, including the affidavit of Kari Peronto and certain attachments to that affidavit.

¶ 18        In her affidavit, Peronto attested that she was the Assistant Principal of Operations for Hinsdale South High School and had been employed in that capacity since 2017. One of Peronto's employment duties was to oversee the use of the facilities, including the use of the tumbling room at the high school. The tumbling room was used for PE classes (two periods per day), including gymnastics instruction, and for adaptive PE (one three-week gymnastics unit each semester). The tumbling room was also used by both the school district and private parties for extracurricular recreational activities, including cheerleading and gymnastics practices and training, gymnastics competitions, and private gymnastics programs. The school district's gymnastics team and cheerleading squads both used the tumbling room for training outside of school hours. Recreational gymnastics competitions, which included other local school districts and private schools (the names of over 25 non-school district gymnastics programs that had competed in recreational gymnastics competitions in the tumbling room between 2009 and 2019 were specifically listed in the affidavit), were held in the tumbling room. The tumbling room was also used for other non-educational, recreational activities by private, non-school district programs, such as Action Gymnastics, which had rented the tumbling room for gymnastics programs outside of school hours.

¶ 19 A "true and accurate accounting" of Action Gymnastics' rental and use of the tumbling room during the 2015 through 2019 school years was attached to the affidavit (Peronto had attested in her affidavit that the accounting was "true and accurate"). The accounting showed that Action Gymnastics had rented the tumbling room for up to 300 hours during the school year and 90 hours during the summer months. The accounting was not a certified document.

¶ 20 Plaintiff filed a motion for reconsideration of the prior dismissal of count IV of his second amended complaint and a motion to conduct discovery relative to the issues raised in the pending motion to dismiss. In its motion to conduct discovery, plaintiff sought to depose Tritch and several other witnesses on the issue of willful and wanton conduct. Plaintiff also sought to depose Peronto and to obtain the documents that Peronto had relied upon in determining the dates that the tumbling room was used by outside entities. Plaintiff did not attach an Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) affidavit to the motion to conduct discovery but did certify the motion pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2022)). Defendant opposed both of plaintiff's motions. Following briefing and a hearing, the trial court denied plaintiff's motion to reconsider and the portions of plaintiff's motion to conduct additional discovery that pertained to the issue of willful and wanton conduct. The trial court granted, however, the portions of plaintiff's motion to conduct discovery that pertained to the recreational use of the tumbling room. In keeping with that ruling, the trial court granted plaintiff leave to depose Peronto as to recreational use and also granted plaintiff's request to have defendant tender the documents that Peronto had relied upon in determining the dates that the tumbling room was used by outside entities for recreational purposes.

¶ 21 After Peronto's deposition, defendant filed a motion for leave to file an amended version of Peronto's affidavit, primarily to add the additional documents that had been tendered as

supporting attachments to the affidavit. Plaintiff opposed the motion for leave and claimed that Peronto had committed perjury in both her initial affidavit and the proposed amended affidavit. Plaintiff attached to his response a copy of Peronto's deposition transcript. Following briefing and a hearing on the matter, the trial court granted defendant's motion for leave and allowed defendant to file the amended Peronto affidavit.

¶ 22    Plaintiff subsequently filed a motion to strike portions of Peronto's amended affidavit, all of the attachments thereto, and portions of defendant's section 2-619 motion to dismiss count I of the third amended complaint. Plaintiff asserted in the motion to strike that "[m]ost" of Peronto's amended affidavit was inadmissible hearsay, that a proper foundation had not been set forth in the amended affidavit for the admission of the documents attached to the amended affidavit, and that any references to the amended affidavit or the affidavit's attachments should be stricken from defendant's motion to dismiss. Plaintiff also filed (in December 2022) a response to defendant's motion to dismiss and opposed the motion. Plaintiff attached to the response to the motion to dismiss the affidavits of two students, Tyra Wormley and Zanayah Mitchell, who were in the tumbling class with plaintiff when the injury occurred. Wormley and Mitchell attested that students contacted the unpadded brick wall on a regular basis in the tumbling class during tumbling maneuvers.

¶ 23    Defendant filed a response and opposed plaintiff's motion to strike, relating to the amended Peronto affidavit. Defendant also filed a reply in support of defendant's section 2-619 motion to dismiss count I of plaintiff's third amended complaint. In the reply, defendant asserted that Wormley's and Mitchell's affidavits should be stricken and that plaintiff was improperly trying to relitigate the issue of willful and wanton conduct, which had already been decided by the trial court against plaintiff with prejudice.

11

¶ 24    Plaintiff subsequently filed a motion for leave to file a fourth amended complaint. In the proposed fourth amended complaint, plaintiff sought to replead his improper supervision and failure to maintain property claims against defendant that alleged willful and wanton conduct in the form of two new counts (counts IV and V) and to add to those claims allegations that were derived from Wormley's and Mitchell's affidavits. Defendant did not respond to plaintiff's motion for leave to file a fourth amended complaint.

¶ 25    In January 2023, the trial court held a hearing on plaintiff's motion to strike and on defendant's section 2-619 motion to dismiss count I of the third amended complaint. Prior to the hearing, the parties had fully briefed the issues that were before the trial court in the two motions. After listening to the parties' oral arguments, the trial court denied plaintiff's motion to strike, granted defendant's motion to dismiss, and dismissed plaintiff's third amended complaint (including count I) and plaintiff's entire case with prejudice. In so doing, the trial court did not explain the reasoning behind its ruling on the motion to dismiss, other than to state that it found that the Tort Immunity Act "[did] apply." The trial court also denied plaintiff's motion for leave to file a fourth amended complaint. Plaintiff appealed.

¶ 26                                    II. ANALYSIS

¶ 27              A. Grant of Defendant's Section 2-615 Motions to Dismiss Plaintiff's
            Failure to Maintain Property and Improper Supervision Claims That Alleged Willful
            and Wanton Conduct (Counts II, III, and IV of the Applicable Amended Complaints)

¶ 28     As his first point of contention on appeal, plaintiff argues that the trial court erred in granting defendant's section 2-615 motions to dismiss plaintiff's failure to maintain property and improper supervision claims against defendant that alleged willful and wanton conduct as set forth fully in counts II and III of the first amended complaint and count IV of the second amended complaint. Starting with count IV, and, presumably, count III, of the applicable

12

amended complaints—plaintiff's improper supervision claim—plaintiff asserts that the motions to dismiss should not have been granted because plaintiff pled sufficient facts to establish that Tritch had engaged in willful and wanton conduct, since the facts alleged showed that Tritch knew or should have known of the danger of tumbling toward or near an unpadded brick wall (based upon her background, training, and experience with gymnastics; her knowledge of the applicable safety rules; her experience with the tumbling class; and her knowledge of plaintiff's abilities) but consciously disregarded that known or obvious danger and instructed her students to tumble toward the wall during the tumbling class warm-up routine without having padding on the wall and without having spotters in place to prevent the students from coming into contact with the wall. As for count II of the first amended complaint—plaintiff's failure to maintain property claim—plaintiff asserts that defendant's motion to dismiss should also not have been granted as to that count because plaintiff pled sufficient facts to establish that defendant had engaged in willful and wanton conduct, even though plaintiff was only required to plead ordinary negligence to establish a *prima facie* case (according to plaintiff), since the facts alleged showed that defendant acted with utter indifference for its students' safety when it constructed a tumbling room that failed to comply with established safety standards (having an unpadded brick wall right next to a spring-loaded tumbling surface) and consciously disregarded that known or obvious danger when it failed to correct that condition by providing the necessary padding for the wall. For all of the reasons stated, therefore, plaintiff asks that we reverse the trial court's grant of defendant's section 2-615 motions to dismiss counts II, III, and IV of the applicable amended complaints and that we remand this case for further proceedings on those counts.

¶ 29        Defendant argues that the trial court's ruling was proper and should be upheld. In support of that argument, defendant asserts that its section 2-615 motions to dismiss were correctly

13

granted for the following reasons. First, plaintiff failed in his various amended complaints to satisfy the demanding pleading standards set forth under Illinois law for willful and wanton conduct claims.[3] More specifically, defendant maintains, the allegations that plaintiff made to try to establish that either Tritch or defendant had engaged in willful and wanton conduct consisted of unsupported general statements, conclusory allegations, and/or statements of mere possibility—rather than allegations of specific facts—and failed to give rise to an inference that plaintiff was engaged in an obviously or inherently dangerous activity or that Tritch or defendant were aware that their actions posed a high probability of serious physical harm to others or would naturally and probably result in injury, as necessary to establish willful and wanton conduct under Illinois law (according to defendant). Most notably, defendant posits, plaintiff failed to allege any specific prior instance of a student being injured while performing a roundoff maneuver during the tumbling class warm-up routine, any specific prior instance of a student coming into contact with the unpadded brick wall during tumbling class or gym class, or any specific prior instance of a serious injury taking place in the tumbling class or in Tritch's gymnastics career of which Tritch or defendant would have been aware. Second, defendant contends, under the established law in Illinois, public school entities and their employees who

---

[3]Although not quite clear from defendant's brief on appeal and contrary to plaintiff's assertion, we will presume that defendant intended for its arguments in this section to apply to all three of the willful and wanton conduct counts (counts II, III, and IV). In so doing, we recognize that defendant also argued in another section of its appellate brief that this court lacks jurisdiction to determine whether the trial court's dismissal of counts II and III was proper because that dismissal was entered without prejudice. However, as plaintiff correctly notes, plaintiff properly preserved the dismissal of counts II and III for later appellate review by realleging, incorporating by reference, or referring to those dismissed counts in plaintiff's subsequent amended complaints. See *Fazekas v. City of DeKalb*, 2021 IL App (2d) 200692, ¶ 17. In addition, the trial court eventually dismissed plaintiff's last active complaint (the third amended complaint) and the entire case with prejudice. We, therefore, reject defendant's lack of jurisdiction argument in this case. See *O'Hara v. State Farm Mutual Automobile Insurance Co.*, 137 Ill. App. 3d 131, 133 (1985) (recognizing that "with prejudice" language in a dismissal order was generally indicative of the fact that the plaintiff would not be allowed to plead over and that the litigation was terminated).

take some precautions to try to prevent an injury from occurring are not guilty of willful and wanton conduct, even if the precautions that were taken prove to be insufficient. In making that contention, defendant notes that plaintiff essentially conceded in his amended complaints that Tritch and defendant took many precautions to protect against injury, such as having a padded floor, a competent instructor with experience and training in the subject matter at issue, and the occasional use of spotters for certain tumbling maneuvers. Third, defendant contends, the safety rules cited by plaintiff in his amended complaints are unavailing because plaintiff did not establish with his allegations that the safety rules applied in the present context and because a public entity's violation of a particular rule, guideline, or policy does not constitute proof of willful and wanton conduct. Fourth and finally, defendant contends, the policy rationale for the immunities contained in the Tort Immunity Act (to prevent the dissipation of public funds, to promote and protect the important work of government, to discourage tort claims against public entities, and to promote harmony in the student-teacher relationship) supports the trial court's ruling in this case. Thus, for all of the reasons set forth, defendant asks that we affirm the trial court's grant of defendant's section 2-615 motions to dismiss plaintiff's failure to maintain property and improper supervision claims that alleged willful and wanton conduct—counts II, III, and IV of the applicable amended complaints.

¶ 30        A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based upon defects that are apparent on the face of the complaint. See 735 ILCS 5/2-615 (West 2020); *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In ruling upon a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Heastie*, 226 Ill. 2d at 531. The crucial inquiry in deciding a section 2-615 motion to dismiss is whether the allegations in the complaint, when considered in a light most favorable to

15

the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A plaintiff is not required to prove his case in the pleading stage. He must merely allege sufficient facts to establish all of the essential elements of his cause of action. *Visvardis v. Ferleger*, 375 Ill. App. 3d 719, 724 (2007). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that the plaintiff can prove no set of facts that will entitle the plaintiff to relief. *Heastie*, 226 Ill. 2d at 531. In reviewing a trial court's ruling on a section 2-615 motion to dismiss, the appellate court applies a *de novo* standard of review. *Id.* at 530-31. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. The appellate court may affirm a trial court's grant of a section 2-615 motion to dismiss on any basis supported by the record. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007).

¶ 31     Under the Tort Immunity Act, a public entity, such as defendant, is generally immune from liability for claims of ordinary negligence relating to its failure to properly supervise an activity (see 745 ILCS 10/3-108 (West 2018)) or its failure to maintain recreational property in a reasonably safe condition (see 745 ILCS 10/3-106 (West 2018)). Immunity under the Act, however, does not apply in those contexts if the injury at issue was the result of the defendant's willful and wanton conduct. See 745 ILCS 10/3-106, 3-108 (West 2018). The determination of whether a defendant had engaged in willful and wanton conduct must be made on a case-by-case basis, considering the totality of the facts and circumstances involved in each particular case. See *Barr v. Cunningham*, 2017 IL 120751, ¶ 15; *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶ 23. Although the issue of whether a defendant's actions constituted willful and wanton

16

conduct is ordinarily a question of fact for a jury to decide, the related issue of whether a claim of willful and wanton conduct has been sufficiently pled may be decided by the trial court as a matter of law. *Torres*, 2020 IL App (3d) 190248, ¶ 23.

¶ 32    A defendant is guilty of willful and wanton conduct, as defined in the Tort Immunity Act and under established Illinois case law, if the defendant has engaged in a course of action that shows either an actual or deliberate intention to harm or an utter indifference to, or conscious disregard for, the plaintiff's welfare. See 745 ILCS 10/1-210 (West 2018); Illinois Pattern Jury Instructions, Civil, No. 14.01 (2018); *Doe ex rel. Ortega-Piron v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004); *Torres*, 2020 IL App (3d) 190248, ¶ 24; *Floyd ex rel. Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 700 (2005). In the present case, there is no allegation that Tritch or defendant acted with an actual or deliberate intention to harm. Our focus, therefore, is on the nonintentional form of willful and wanton conduct—whether defendant engaged in a course of action that shows an utter indifference to, or conscious disregard for, the plaintiff's welfare.

¶ 33    To establish the nonintentional form of willful and wanton conduct, a plaintiff must do more than merely plead inadvertence, incompetence, or unskillfulness on the part of the defendant. See *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 11; *Torres*, 2020 IL App (3d) 190248, ¶ 24. Rather, the plaintiff must generally allege and show that when the defendant acted, or failed to act, he or she had knowledge, or should have had knowledge under the circumstances, that his or her conduct posed a high probability of serious physical harm to others. See *Leja*, 2012 IL App (2d) 120156, ¶ 11; *Pomrehn v. Crete-Monee High School District*, 101 Ill. App. 3d 331, 335 (1981). In addition, to satisfy Illinois pleading requirements, willful and wanton conduct must be established through well-pled facts. *Winfrey v.*

17

*Chicago Park District*, 274 Ill. App. 3d 939, 943 (1995). Simply labelling conduct as "willful and wanton" in a pleading will not suffice. *Id.* Conclusional statements of fact or law are insufficient to establish willful and wanton conduct, even if those statements succeed in generally informing the defendant of the nature of the claim against the defendant. See *id.*

¶ 34     In the context of an improper supervision claim against a school district, courts have found that willful and wanton conduct was sufficiently pled or proven in cases where the facts alleged or the evidence presented showed that the teacher involved directed or allowed the plaintiff student to participate in an activity that the teacher knew or should have known was highly dangerous or risky. See, *e.g.*, *Bernesak v. Catholic Bishop of Chicago*, 87 Ill. App. 3d 681, 685-86 (1980) (finding that willful and wanton conduct was sufficiently proven in a school playground injury case where the evidence presented at the parties' jury trial showed that the teacher or other school employee who was supervising the students' playground activities at the time of the plaintiff's injury was aware that the students were playing an obviously dangerous or risky game, known as "crack the whip," but took no action to stop the students from doing so); *Bowers by Bowers v. Du Page County Regional Board of School Trustees District No. 4*, 183 Ill. App. 3d 367, 380 (1989) (finding that willful and wanton conduct was sufficiently pled in a case in which the plaintiff student was injured in her high school PE class while participating in the obviously dangerous activity of climbing a 20- to 25-foot-high rope ladder where the plaintiff alleged in her amended complaint, among other things, that the defendant had failed to instruct students on how to properly climb a rope ladder, had failed to ascertain whether the plaintiff was able to perform that task, and had failed to ensure that other students did not hinder or endanger the plaintiff while she was performing that task).

¶ 35        On the other hand, in the context of a failure to maintain recreational property claim[4] against a school district or other public entity, courts have found that willful and wanton conduct was sufficiently pled or proven in cases where the facts alleged or the evidence presented showed that the school district or other public entity: (1) knew of a dangerous condition but took no action to correct it, (2) was aware of prior injuries caused by a dangerous condition but took no action to remedy the condition, or (3) removed a safety feature from the recreational property despite the known danger of doing so. See *Leja*, 2012 IL App (2d) 120156, ¶ 11 (pointing out the three general factual situations where courts have found that willful and wanton conduct was sufficiently pled or proven in the context of a failure to maintain property claim and setting forth a sample case for each of those three factual situations); *Torres*, 2020 IL App (3d) 190248, ¶¶ 23-25 (same).

¶ 36        In the present case, we find that plaintiff failed to allege sufficient specific facts to establish his claims of willful and wanton conduct. With regard to count IV of the second amended complaint, plaintiff's improper supervision claim, plaintiff attempted to allege willful and wanton conduct in a manner that was consistent with the prior case law decisions in this context. In keeping with those decisions, the thrust of plaintiff's assertion of willful and wanton conduct was that Tritch had ignored a known or obvious danger and had directed plaintiff to take part in a highly dangerous or risky activity when she instructed plaintiff to perform a roundoff maneuver toward the unpadded brick wall and to land within feet of the wall during the tumbling class's warm-up routine without having the students place padding on the wall first and without

---

[4]Although plaintiff contests that the tumbling room in this case is recreational property, we will assume that it is for our analysis of this particular issue but will address that matter fully in our analysis of the next issue.

having spotters present to prevent plaintiff from running into the wall. However, the allegations that plaintiff made in the second amended complaint to try to establish the necessary inferences—that the danger was, or should have been, known or obvious to Tritch and that the activity itself was highly dangerous or risky—were insufficient to create those inferences because the allegations were conclusory, contradictory at times, and/or obviously inapplicable.

¶ 37        Starting with the conclusory allegations, although plaintiff alleged that Tritch had witnessed on prior occasions students strike or make contact with the brick wall during tumbling, plaintiff did not allege any specific facts to support those allegations, such as which students had previously made contact with the wall, when the prior incidents had occurred, whether plaintiff was involved in any of the prior incidents, or whether any student was injured during those prior incidents. Plaintiff cannot rely on the affidavits of Wormley and Mitchell to create an inference that Tritch had knowledge of the danger because Wormley's and Mitchell's affidavits were not part of the pleadings in this case and were not submitted until several months after the issue of willful and wanton conduct had already been decided by the trial court against plaintiff with prejudice. See *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010) (indicating that in a section 2-615 proceeding, a court may consider only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions of record). In addition, while plaintiff alleged that Tritch knew from her background and experience that persons performing roundoffs or other tumbling maneuvers commonly over-rotated or landed beyond the designated landing area, plaintiff did not allege specific facts to establish when any prior incidents of that nature had occurred, how often those incidents had occurred, or whether anyone was injured during those prior incidents. Nor did plaintiff allege any specific facts, such as prior incidents, to support his conclusory allegation that Tritch knew that plaintiff

20

lacked the strength and coordination to perform a roundoff successfully. As for plaintiff's contradictory and/or inapplicable allegations, while plaintiff alleged that various safety rules applied, were known to Tritch, and were not followed at the time of plaintiff's injury, other allegations in plaintiff's complaint contradicted those allegations and made it apparent that the safety rules to which plaintiff referred were not applicable in the context in which plaintiff was injured because the rules did not apply to a high school PE tumbling class (plaintiff made no specific allegation that the rules applied in that context); applied only to maneuvers that were conducted on tumbling tracks and not to maneuvers that were conducted on an open gymnastics floor, such as where plaintiff was injured; or applied to other sports or activities entirely. Based upon the conclusory, contradictory, and/or inapplicable nature of plaintiff's allegations, the trial court correctly determined that count IV of plaintiff's second amended complaint failed to allege sufficient facts to establish that defendant or Tritch had engaged in willful and wanton conduct. The trial court, therefore, properly granted defendant's section 2-615 motion to dismiss count IV on that basis. To the extent that plaintiff can challenge the dismissal of count III in this appeal, count III suffered from many or all of the same flaws and was properly dismissed by the trial court as well.[5]

¶ 38        In determining that plaintiff failed to allege sufficient facts to establish willful and wanton conduct in his improper supervision claim (counts IV and III), we have considered the supreme court's decision in *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007), the main case relied upon by plaintiff on that particular issue, but we find that the *Murray* decision is readily distinguishable and does not support plaintiff's position. In *Murray*, the plaintiff, a

_____

[5]For the purpose of our analysis here, we will assume that plaintiff could both preserve count III for appellate review and replead count III in a subsequent amended complaint as count IV. Defendant has not specifically challenged plaintiff's ability to do so in this appeal, and we take no position on the matter.

21

seventh-grade student, was severely injured and rendered a quadriplegic when he tried to do a front flip off of a mini trampoline in an extracurricular tumbling class at school and landed on his neck and shoulders. *Id.* at 217. The trial court granted summary judgment for the defendants in that case, finding that the defendants were immune from liability under the Tort Immunity Act, and the appellate court affirmed. *Id.* at 224-25. After determining that the defendants' claim of immunity had to be analyzed under section 3-109 of the Act (745 ILCS 10/3-109 (West 1992)), the section that applied to a person's voluntary participation in a hazardous recreational activity, such as trampolining, the supreme court reversed the trial and appellate courts and remanded the case for further proceedings, finding that the pleadings and supporting documents were sufficient to establish a genuine issue of material fact as to whether the defendants were guilty of willful and wanton conduct. *Murray*, 224 Ill. 2d at 246. The *Murray* decision is of no benefit to plaintiff in the present case, however, because the supreme court made its determination on willful and wanton conduct in *Murray* in the context of a summary judgment proceeding and with the benefit of the deposition testimony of the plaintiff's expert witness, who described in extensive detail the problems with the tumbling class in that case and with the instructor's use of the mini trampoline, which the expert indicated was well-known to be associated with the risk of spinal cord injury from improperly executed somersaults (the manner in which the plaintiff was injured in that case) and could result in catastrophic injuries (such as the one suffered by the plaintiff in that case). See *id.* at 216, 220-24. The procedural posture (summary judgment) and the evidence presented (the deposition testimony of plaintiff's expert witness) in *Murray* makes it unsuitable for trying to draw any legal significance from that case to the present case.

¶ 39      A much more suitable comparison can be drawn between the facts of the present case and the facts of *Mathias v. Winnebago Community Unit School District 323*, 2021 IL App (2d)

22

200039-U, ¶¶ 32, 34, 44.[6] In *Mathias*, the plaintiff high school student suffered a serious wrist injury when he ran into an unpadded concrete wall in his PE class. *Id.* ¶¶ 2, 5, 7. At the time of his injury, plaintiff was playing a game in the gymnasium called "scramble ball" that the students had been directed to play by the PE teacher. *Id.* ¶¶ 5, 7. The object of the game was for a player to kick a ball and then run to a "safe zone" before being hit with the ball by an opposing player. *Id.* As designated by the teacher, the safe zone was an area that was about two to three feet wide and was bounded by an unpadded concrete wall. *Id.* The trial court in that case found that the plaintiff had failed to sufficiently allege willful and wanton conduct and granted the defendant's motion to dismiss on that basis, even though the plaintiff had alleged in his complaint, among other things, that the teacher knew or should have known that students playing the game as instructed would be required to run headlong toward the unpadded concrete wall in the safe zone; that some of the students would be unable to stop, would run directly into the wall, and could sustain serious injury; and that the manner in which the teacher had instructed the students to play the game posed an unreasonable risk of harm. *Id.* ¶¶ 6, 8, 13. The appellate court affirmed the trial court's dismissal of the plaintiff's complaint, noting that the plaintiff did not set forth specific facts to establish that the scramble ball game was more dangerous than other activities normally conducted in a school gym.[7] *Id.* ¶¶ 32, 34, 44. The appellate court commented further that although the plaintiff's allegations—that the PE teacher required the students to play a game where the students were to run toward a concrete wall at full speed—may have been sufficient to establish negligence, the allegations in that case were not sufficient to establish an utter

---

[6]Pursuant to Illinois Supreme Court Rule 23(e) (eff. Feb. 1, 2023), a nonprecedential order entered under subparagraph (b) of the rule on or after January 1, 2021, may be cited for persuasive purposes.

[7]The appellate court went on to find, however, that the trial court had committed an abuse of discretion by dismissing the plaintiff's complaint with prejudice. *Id.* ¶ 42.

indifference to or conscious disregard for the safety of others or that the teacher's conduct posed a high probability of serious physical harm to the students as necessary to establish willful and wanton conduct. *Id.* ¶ 32. We believe that the same conclusion can appropriately be made about Tritch's conduct in the present case.

¶ 40    With regard to count II of the first amended complaint, plaintiff's failure to maintain property claim, plaintiff again attempted to allege willful and wanton conduct in a manner that was consistent with the prior case law decisions in that context. In line with those decisions, the thrust of plaintiff's assertion of willful and wanton conduct was that defendant knew of the allegedly dangerous condition in the tumbling room and of injuries that had previously occurred or almost occurred but took no action to correct the dangerous condition and actually removed a safety feature (the various tumbling safety rules cited) that applied to other similar activities held in that same tumbling room. Plaintiff's count II, however, suffered from the same problem as plaintiff's counts III and IV in that count II contained many of the same or similar conclusory, contradictory, and/or inapplicable allegations. Although plaintiff tried to establish in count II that defendant knew that the tumbling room was constructed or maintained with a dangerous condition in existence, plaintiff's allegation of knowledge, however, was based upon the alleged violation of various safety rules, which, as stated above, did not apply in this context, and near-miss prior occurrences, which were not sufficiently pled or established. As with counts III and IV, the allegations that plaintiff made in count II were insufficient to state a claim of willful and wanton conduct, and the trial court properly granted defendant's section 2-615 motion to dismiss count II on that basis.[8]

---

[8]In reaching that conclusion, we take no position on whether plaintiff had to sufficiently allege and establish willful and wanton conduct, at least initially, as defendant asserts in this appeal, or only ordinary negligence, as plaintiff asserts. Statements can be taken from the case law to support either position. Compare *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL

¶ 41　　　　　　　B. Grant of Defendant's Section 2-619 Motion to Dismiss Plaintiff's
Failure to Maintain Property Claim That Alleged Ordinary Negligence
(Count I of the Third Amended Complaint)

¶ 42　　　　　As his second point of contention on appeal, plaintiff argues that the trial court erred in granting defendant's section 2-619 motion to dismiss plaintiff's failure to maintain property claim against defendant that alleged ordinary negligence as set forth fully in count I of the third amended complaint. Plaintiff asserts that the motion to dismiss should not have been granted because defendant failed in its burden to establish that it was entitled to immunity under section 3-106 of the Tort Immunity Act.[9] In support of that assertion, plaintiff contends first that defendant's claim of section 3-106 immunity was lacking because defendant failed to present any evidence to contradict the affidavits of Wormley and Mitchell and to show that defendant was not guilty of willful and wanton conduct, as required under section 3-106. As defendant correctly pointed out in the trial court proceedings and in this appeal, however, plaintiff did not submit the Wormley and Mitchell affidavits until long after the trial court had already decided the issue of willful and wanton conduct with prejudice against plaintiff. We, therefore, reject

---

112479, ¶ 19 (indicating that a plaintiff who seeks to recover damages based upon willful and wanton conduct must establish the elements of both ordinary negligence and willful and wanton conduct), with *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378 (1995) (indicating that immunity under the Tort Immunity Act is an affirmative defense that, if properly raised and proven by the public entity defendant, bars the plaintiff's right to recovery). In any event, regardless of which approach is adopted, defendant was permitted to file a section 2-615 motion to challenge the sufficiency of plaintiff's willful and wanton conduct allegations in the present case because plaintiff set forth the factual basis for defendant's tort immunity defense in his applicable amended complaints and sought to plead around that defense by alleging that Tritch and/or defendant had engaged in willful and wanton conduct. See *K. Miller Construction Co.*, 238 Ill. 2d at 292 (recognizing that an affirmative defense may be raised in a section 2-615 motion when the defense is established by the facts apparent on the face of the complaint and no other facts alleged in the complaint negate the defense).

[9]In his argument on this issue, plaintiff asserts further that defendant also failed to establish its claim that it was entitled to immunity under other sections of the Tort Immunity Act (and the School Code) as well. However, because defendant has not asserted those other sections of the Act in support of its argument on this issue (other than a brief reference in a footnote), we have not addressed those other sections and have confined our discussion on this issue to the applicability of section 3-106 immunity to the plaintiff's claim of ordinary negligence.

plaintiff's first contention on this issue and will not address it any further in our discussion of this issue. Plaintiff also contends on this issue that defendant's claim of section 3-106 immunity was also lacking because defendant failed to establish that the tumbling room was intended or permitted to be used for recreational purposes as was necessary for section 3-106 immunity to apply. To the contrary, plaintiff maintains, the properly admissible evidence that was presented in the section 2-619 proceeding showed that the tumbling room was only incidentally used for recreational purposes, which was not sufficient under the established law to entitle defendant to section 3-106 immunity. Plaintiff asks, therefore, that we reverse the trial court's grant of defendant's section 2-619 motion to dismiss count I of the third amended complaint and that we remand this case for further proceedings or that we provide plaintiff with certain other relief that plaintiff has requested in the alternative (depending upon our ruling on plaintiff's motions to strike, to conduct additional discovery, and for leave to file a fourth amended complaint as set forth in our discussion of the next issue).

¶ 43    Defendant argues that the trial court's ruling was proper and should be upheld. Defendant asserts that the trial court correctly found that the tumbling room was intended or permitted to be used for recreational purposes, correctly determined that defendant was entitled to immunity under section 3-106 of the Tort Immunity Act for plaintiff's failure to maintain property claim that alleged ordinary negligence, and correctly granted defendant's section 2-619 motion to dismiss count I of the third amended complaint on that basis. Defendant asks, therefore, that we affirm the trial court's judgment.

¶ 44    Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2022); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The statute's purpose is to provide litigants

26

with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several different grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2022). Under subsection (a)(9), the subsection that applies in this case, a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by other affirmative matter, which avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2022). An "affirmative matter" is something in the nature of a defense that negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. Immunity under the Tort Immunity Act is an affirmative matter that may properly be raised in a section 2-619(a)(9) motion to dismiss. *Id.* In ruling upon a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at 367-68. A section 2-619 motion to dismiss should not be granted unless it is clearly apparent that the plaintiff can prove no set of facts that would entitle the plaintiff to recovery. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8. On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo. Van Meter*, 207 Ill. 2d at 368. As noted above, when *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co.*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of a section 2-619 motion to dismiss a complaint may be affirmed on any basis supported by the record. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 14.

¶ 45        Section 3-102 of the Tort Immunity Act codified the common law duty that local public

entities had to exercise ordinary care to maintain public property in a reasonably safe condition.

745 ILCS 10/3-102(a) (West 2018); *Bubb*, 167 Ill. 2d at 377; *Torres*, 2020 IL App (3d) 190248,

¶ 19. Section 3-106 of the Act, however, provides an affirmative defense, which, if properly

raised and proven by a public entity, bars a plaintiff's right to recovery for an ordinary

negligence claim. See 745 ILCS 10/3-106 (West 2018); *Bubb*, 167 Ill. 2d at 378; *Adamczyk v.*

*Township High School District 214*, 324 Ill. App. 3d 920, 922 (2001).

¶ 46        Specifically, section 3-106 states:

> "Neither a local public entity nor a public employee is liable for an injury where
>
> the liability is based on the existence of a condition of any public property
>
> intended or permitted to be used for recreational purposes *** unless such local
>
> entity or public employee is guilty of willful and wanton conduct proximately
>
> causing such injury." 745 ILCS 10/3-106 (West 2018).

Section 3-106 was enacted with the purpose of encouraging the development and maintenance of

public parks, playgrounds, and similar recreational areas. *Adamczyk*, 324 Ill. App. 3d at 922-23.

By providing immunity, the legislature sought to prevent public funds from being diverted from

their intended purpose and being used to pay damage claims instead. See *Bubb*, 167 Ill. 2d at

378.

¶ 47        Courts have applied section 3-106 immunity in two separate situations: (1) where the

property at issue was intended or permitted to be used for recreational purposes; and (2) where

the property at issue, though not recreational itself, increased the usefulness of recreational

property that was adjacent to the property at issue. See *Adamczyk*, 324 Ill. App. 3d at 923.

Because property can have more than one intended use, Illinois courts have made clear that the

28

determination of whether section 3-106 immunity will apply must be made based upon the character and nature of the property as a whole and not based upon the plaintiff's use of the property or activity at the time of the injury. See *Bubb*, 167 Ill. 2d at 378-81, 383; *Adamczyk*, 324 Ill. App. 3d at 924. The application of section 3-106 immunity, therefore, must be decided through a case-by-case evaluation of the character and nature of the property at issue, which may include consideration of whether the property has been used for recreation in the past or whether recreational use of the property has been encouraged. See *Bubb*, 167 Ill. 2d at 382, 384. In any event, section 3-106 immunity will not apply if the recreational use of the property at issue was only incidental to the property's overall and regular use. See *id.* at 382; *Adamczyk*, 324 Ill. App. 3d at 925.

¶ 48    In the present case, after reviewing the pleadings, motions, and supporting documents tendered in the section 2-619 proceedings, we find that the tumbling room was intended or permitted to be used for recreational purposes. Even without considering the portions of defendant's exhibits to which plaintiff objected (portions of Peronto's amended affidavit and the attachments thereto), the evidence before the trial court at the hearing on the motion to dismiss established that the nature and character of the tumbling room as a whole was recreational. The tumbling room had been used in the past by the high school's extracurricular gymnastics teams, cheerleading squads, and dance teams for practices and competitions. The tumbling room had also been rented out at various times by a local gymnastics program. The fact that the tumbling room was also used by defendant for educational purposes does not in any way diminish the recreational character of the tumbling room. See *Bubb*, 167 Ill. 2d at 378-81 (indicating that the determination of whether section 3-106 immunity will apply must be made based upon the character and nature of the property as a whole and not based upon the plaintiff's use of the

property or activity at the time of the injury); *Adamczyk*, 324 Ill. App. 3d at 924 (same). Thus, defendant was immune from liability under section 3-106 for its alleged negligent failure to construct and maintain the tumbling room in a reasonably safe condition. See *Bubb*, 167 Ill. 2d at 382, 384; *Adamczyk*, 324 Ill. App. 3d at 925. The trial court, therefore, properly granted defendant's section 2-619 motion to dismiss count I of plaintiff's third amended complaint with prejudice.

¶ 49                    C. Denial of Plaintiff's Motions to Strike, to Conduct
              Additional Discovery, and for Leave to File a Fourth Amended Complaint

¶ 50        As his third and final point of contention on appeal, plaintiff argues that the trial court erred in denying his motion to strike portions of Peronto's amended affidavit and the attachments thereto (and the references to that amended affidavit and/or attachments that were contained in defendant's motion to dismiss), his motion to conduct additional discovery, and his motion for leave to file a fourth amended complaint. However, because we have already determined that the portions of Peronto's amended affidavit not objected to adequately established that the tumbling room was recreational property, we need not determine whether the trial court erred when it denied plaintiff's motion to strike the objected to portions of Peronto's amended affidavit and the attachments thereto. See *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990) (indicating that a reviewing court will not decide moot or abstract questions or render advisory opinions). As for his two remaining motions, plaintiff asserts that his motion to conduct additional discovery should have been granted because he complied with all of the applicable requirements, sought crucial evidence that was in defendant's possession, and had a right to discover affirmative evidence that would defeat the grounds of defendant's motion to dismiss. With regard to his motion for leave to file a fourth amended complaint, plaintiff asserts that the motion should have been granted as well because plaintiff was merely seeking to conform the pleadings to the proof

that had been submitted in the prior motion to dismiss proceedings and because allowing plaintiff to file the fourth amended complaint would not cause unfair surprise to defendant or alter the evidence that defendant was required to defend against. Plaintiff also asserts that would serve the ends of justice by allowing the trial court to evaluate all of the available evidence in plaintiff's case, without being hindered by the alleged pleading deficiencies, before deciding whether to involuntarily dismiss a case. For the reasons stated, plaintiff asks that we reverse the trial court's denial of his motion to conduct additional discovery. Plaintiff also asks that we reverse the ultimate ruling to which plaintiff's motion pertained—the trial court's grant of defendant's section 2-619 motion to dismiss count I of plaintiff's third amended complaint—and that we remand this case for further proceedings on that count with directions to the trial court to allow plaintiff to conduct the additional discovery requested before responding to defendant's motion to dismiss. In the alternative, plaintiff asks that we reverse the trial court's denial of plaintiff's motion for leave to file a fourth amended complaint and that we remand this case for further proceedings on that complaint.

¶ 51    Defendant argues that the trial court's rulings on plaintiff's two remaining motions were proper and should be upheld. As for the motion to conduct additional discovery, defendant asserts that the motion was properly denied in part because plaintiff failed to comply with the necessary requirements for such a motion to be granted and because plaintiff's request for additional discovery was overly broad. In making that assertion, defendant notes that the trial court granted the portion of plaintiff's discovery motion that pertained to the issue of the recreational use of the tumbling room—the issue that was before the trial court to decide in the section 2-619 motion proceedings. With regard to plaintiff's motion for leave to file a fourth amended complaint, defendant asserts that the motion was properly denied because the proposed

31

fourth amended complaint contained no additional allegations that would possibly alter the trial court's finding that the tumbling room was recreational property and because plaintiff was given plenty of opportunities to plead his claims. Thus, for all of the reasons set forth, defendant asks that we affirm the trial court's denial of plaintiff's two remaining motions and that we affirm the trial court's judgment.

¶ 52    Under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013), a trial court may stay the proceedings on a section 2-619 motion to dismiss and allow the nonmoving party to conduct additional discovery before the nonmoving party responds to the motion. See *Department of Financial & Professional Regulation v. Walgreen Co.*, 2012 IL App (2d) 110452, ¶ 21. To obtain such relief, the nonmoving party must submit an affidavit that satisfies the requirements of Rule 191(b)—the nonmoving party must state the name of the person whose affidavit cannot be obtained, the reason the affidavit cannot be obtained, what the nonmoving party believes that person would testify to, and the reasons for that belief. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013); *Kim v. State Farm Mutual Automobile Insurance Co.*, 2021 IL App (1st) 200135, ¶ 58. A party who fails to file a Rule 191(b) affidavit cannot complain that the discovery process was insufficient or too limited. *Fayezi v. Illinois Casualty Co.*, 2016 IL App (1st) 150873, ¶ 43. A trial court's ruling on a Rule 191(b) motion to conduct additional discovery is a discovery ruling and will not be reversed on appeal absent an abuse of discretion. *Crichton v. Golden Rule Insurance Co.*, 358 Ill. App. 3d 1137, 1150 (2005). The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

32

¶ 53    Courts in Illinois are encouraged to freely and liberally allow amendments to pleadings. *Id.* To that end, section 2-616(a) of the Code authorizes the amendment of pleadings at any time before final judgment on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2022). Similarly, section 2-616(c) of the Code allows a pleading to be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just. 735 ILCS 5/2-616(c) (West 2022). A party's right to amend pleadings, however, is not absolute or unlimited. *Lee*, 152 Ill. 2d at 467. Rather, the decision whether to grant or deny leave to amend rests within the sound discretion of the trial court. *Id.* Some of the factors a court will consider in determining whether to allow a motion to amend pleadings are whether the amendment would cure a defect in the pleadings, whether the other party would be prejudiced or surprised by the proposed amendment, whether the proposed amendment is timely, and whether there were previous opportunities to amend the pleadings. *Id.* at 467-68. In general terms, however, the ultimate question to be answered when a party seeks leave to amend is whether the amendment would further the ends of justice. *Hiatt v. Illinois Tool Works*, 2018 IL App (2d) 170554, ¶ 38.

¶ 54    In the present case, after reviewing the record on this issue and considering the legal principles set forth above, we find that trial court did not abuse its discretion in denying, at least in part, plaintiff's two remaining motions. With regard to plaintiff's request to conduct additional discovery, even if we assume that plaintiff's certified motion was sufficient to satisfy the affidavit requirement of Rule 191(b), we would still have to conclude that the trial court's ruling, which granted the motion in part and denied the motion in part, was properly made. As defendant correctly points out, the trial court granted those portions of plaintiff's motion that pertained to the matter at issue in the 2-619 proceedings—whether the tumbling room was recreational

property—and allowed plaintiff to depose Peronto on that issue and to obtain the documents that Peronto had considered relevant thereto. The trial court's denial of plaintiff's discovery request was limited to those portions of the motion that were overly broad, that sought to inquire further into the previously resolved issue of willful and wanton conduct, and that did not pertain to whether the tumbling room was recreational property. We conclude, therefore, that the trial court's ruling on plaintiff's motion to conduct additional discovery was not erroneous.

¶ 55 We reach the same conclusion as to the trial court's ruling on plaintiff's motion for leave to file a fourth amended complaint. As defendant notes, plaintiff failed to add any new allegations to the fourth amended complaint that could possibly change the trial court's finding that the tumbling room was recreational property. Instead, plaintiff sought to improperly relitigate the issue of willful and wanton conduct, an issue that had already been decided by the trial court against plaintiff with prejudice. We, thus, conclude that the trial court's ruling on plaintiff's motion for leave to file a fourth amended complaint was proper.

¶ 56                                     III. CONCLUSION

¶ 57 For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 58 Affirmed.

¶ 59 JUSTICE ALBRECHT, concurring in part and dissenting in part:

¶ 60 I dissent from the majority's findings regarding the dismissal of Tripp's improper supervision claim and concur with all its other findings. Tripp plainly alleged that Tritch knew of a serious risk of injury if she instructed students to tumble toward a brick wall, which is demonstrated by the allegations that Tripp was not the only person to strike the brick wall during classes. Additionally, his complaint alleges facts that indicate that there is an inherent risk of

34

injury in gymnastics routines. Therefore, I would reverse the circuit court's dismissal of the complaint as to the improper supervision claim.

¶ 61    Tripp's improper supervision claim was dismissed with prejudice pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2020). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). When ruling on such a motion, the circuit court must accept all well-plead facts as true and construe all reasonable inferences in favor of the plaintiff. *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337, 338 (1998). On review, we should consider whether the allegations provided in the complaint, when viewed in the light most favorable to Tripp, are "sufficient to set forth a cause of action upon which relief can be granted." *Oropeza v. Board of Education*, 238 Ill. App. 3d 399, 402 (1992). "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2-612(b) (West 2020).

¶ 62    Willful and wanton conduct is successfully plead when the plaintiff pleads sufficient "facts that demonstrate a conscious disregard for the safety of others" and explains why the defendant knew or should have known about the dangerous condition. See *Majewski*, 177 Ill. App. 3d at 341. The majority finds that the allegations contained in the complaint regarding Tritch's knowledge are conclusory and thus the claim is insufficiently plead. While it is correct that "conclusory allegations that a defendant 'knew or should have known' of a condition or an event, without allegations of specific facts as to how or why a defendant knew or should have known, are insufficient to state a claim for negligence," we are not without those allegations of facts as to how Tritch knew of the risks. *Mitchell v. Norman James Construction Co., Inc.*, 291

35

Ill. App. 3d 927, 935 (1997). Further, "[t]he plaintiff need not plead the evidentiary facts that he will use to prove the defendant's knowledge." *Woodson v. North Chicago Community School District No. 64*, 187 Ill. App. 3d 168, 172 (1989). Here, Tripp alleged that Tritch knew of the risk of injury, but also included an explanation for how she knew of the danger—other students had struck the wall during tumbling exercises and Tritch's training and experience necessarily provided knowledge on proper and necessary safety precautions. Based on these allegations, Tripp plead sufficient facts to demonstrate Tritch's conscious disregard for the safety of her students. He alleged Tritch continued to instruct students to tumble toward the wall after knowing students had come into contact with it previously, despite her awareness from her background and training that safety precautions were necessary in a gymnastics class.

¶ 63  The majority next relies on *Mathias v. Winnebago Community Unit School District 323*, 2021 IL App (2d) 200039-U, ¶¶ 32, 34, 44, to demonstrate that the facts alleged in plaintiff's complaint are not sufficient to maintain a cause of action for improper supervision. However, there is a distinct difference between the circumstances of *Mathias* and the matter before us. The court in *Mathias* notes that the plaintiff did not allege that the supervising employee had prior knowledge of impending danger. *Id.* Here, the complaint does indeed allege prior knowledge. Though not specific as to the actual dates and persons involved, the complaint alleges that other students had struck the brick wall and that Tritch knew of those instances.

¶ 64  Moreover, while the court in *Mathias* indicates that a sporting game during gym does not constitute risky behavior because it is not "an obviously dangerous activity," this does not mean all activities in a gymnasium are not sufficiently risky to support a cause of action for improper supervision. *Id.* ¶ 25. Generally, a complaint alleging willful and wanton conduct must set forth facts that demonstrate the activity is dangerous. See *Tijerina by Tijerina v. Evans*, 150 Ill. App.

36

3d 288, 292 (1986). The complaint here alleged several facts regarding the makeup of the tumbling room, the safety precautions provided in the room including certain padded walls, and information regarding basic gymnastics safety regulations. These facts support the conclusion that the activities being performed in the tumbling class were inherently dangerous or risky. Thus, it has been sufficiently alleged that a gymnastics class conducted within this context "is an activity that is generally associated with a risk of serious injury." *Id.*

¶ 65     Unlike the majority, I find the analysis in *Murray v. Chicago Youth Center*, 224 Ill. 2d 213 (2007), persuasive. The majority finds the situation here distinguishable because *Murray* ruled on a motion for summary judgment, whereas this case does not have the "benefit" of expert testimony to explain the risk of injury associated with the activity. *Supra* ¶ 38. However, we do not need the benefit of an expert at this stage in the proceedings as we must accept Tripp's allegations as true. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 510 (1994). Furthermore, dismissing Tripp's complaint at this stage deprives him of ever receiving that benefit.

¶ 66     *Murray* stands for the principle that whether conduct is considered willful and wanton is a question of fact a jury must decide, and a court's role is to determine whether the complaint alleges sufficient facts of willful and wanton conduct to create a question for the jury. 224 Ill. 2d at 245. When deciding this issue, the court in *Murray* relied on several cases that found the facts in a complaint alleging willful and wanton conduct sufficient to withstand a section 2-615 motion to dismiss. See, *e.g.*, *id.* at 240-45; *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 29 (2004); *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 285 (2000); *Doe v. Calumet City*, 161 Ill. 2d 374, 390 (1994). Through these cases, *Murray* provides a thorough explanation of what it means for conduct to be willful and wanton. 224 Ill. 2d at 240-

45. From this, we can conclude that willful and wanton conduct is sufficiently alleged when the complaint demonstrates that the defendant's actions constitute " 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent it.' " *American National Bank & Trust Co.*, 192 Ill. 2d at 285 (quoting *Ziarko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 273 (1994)). Tritch's knowledge of the danger in directing students to perform tumbling routines toward a brick wall and her failure to prevent or mitigate that danger are alleged in Tripp's complaint. Taking those allegations as true, Tripp has successfully plead willful and wanton conduct. See *Geise*, 159 Ill. 2d at 510.

¶ 67        It has been established in this case that Tritch instructed students to perform various tumbling exercises while moving toward a brick wall. It is alleged in the complaint that several other students fell against the brick wall while tumbling in that direction before Tripp's accident took place. It is also alleged that Tritch took no action to mitigate any potential risk of harm by instructing the students to tumble in a different direction. When reviewing a motion to dismiss, we must examine the complaint as a whole and not in disconnected parts. *Gregor v. Kleiser*, 111 Ill. App. 3d 333, 335 (1982). The complaint as a whole, when taken as true, liberally construed, and considered in the light most favorable to Tripp, alleges willful and wanton conduct on the part of Tritch sufficient to survive the motion to dismiss stage. See *Oropeza*, 238 Ill. App. 3d at 402. Accordingly, I would reverse the circuit court's dismissal of Tripp's improper supervision claim and remand for further proceedings.

¶ 68        Moreover, even if I were to concur with the majority's holding as it relates to this claim, I would still reverse the circuit court's dismissal with prejudice and would allow Tripp leave to replead. While the circuit court has discretion in its decision to dismiss a complaint with prejudice, that discretion should generally favor amendment. See *Marczak v. Drexel National*

*Bank*, 186 Ill. App. 3d 640, 643 (1989) ("A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their cause of action."); see also *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1085 (1991) ("Doubts should be resolved in favor of the allowance of the amendment."). The court should have only dismissed with prejudice if no set of facts would entitle the plaintiff to relief. *Marshall*, 222 Ill. 2d at 429. Based on the allegations contained in Tripp's complaint that I find to be sufficient to state a cause of action, I would also hold that Tripp could allege additional facts that would further establish a claim for willful and wanton conduct. Thus, I would find that the court's dismissal with prejudice was an abuse of discretion.